In the Matter of the Application of GDYNIA AMERICA LINE, INC., Petitioner, for an Order of Certiorari against FRANK J. TAYLOR, as Comptroller of The City of New York, and MILTON SOLOMON and Others, as and Constituting the Board of Excise Tax Review, Respondents.

First Department, February 26, 1937.

*H. H. Nordlinger* of counsel [*Jacob I. Charney* with him on the brief; *Nordlinger, Riegelman & Cooper*, attorneys], for the petitioner.

*Frank J. Derrick* of counsel [*Oscar S. Cox* and *Robert Granville Burke*, with him on the brief; *Paul Windels, Corporation Counsel*, attorney], for the respondents.

TOWNLEY, J.  Local Law No. 9 of New York City Local Laws of 1934, section 2, subdivision (a), imposed an excise tax measured by gross receipts of the preceding year for the privilege of carrying on or exercising for gain or profit within the city of New York any trade, business, profession or commercial activity other than financial business during the balance of the calendar year 1934.  The tax amounted to one-twentieth of one per cent of the gross receipts in excess of $15,000 from the business carried on during the calendar year 1933.  The term " receipts," which measures the tax imposed, is defined in section 1, subdivision (c), to comprise " gross receipts received in, or by reason of any sale made or services rendered or commercial or business transaction had in, the City of New York."  Payment of the tax is not a condition precedent to doing business and the failure to pay the tax is not a criminal offense.  Local Law No. 17 (published as No. 18) of New York City Local Laws of 1934 is similar to Local Law No. 9 except that the year covered is 1935 and the amount of the tax is one-tenth of one per cent of the gross receipts in 1934.

The petitioner is a domestic corporation organized under the laws of the State of New York, having its principal place of business and office in the city of New York.  It is engaged in carrying on for gain a commercial activity within the meaning of the local law in question.  It is the soliciting agent for passenger and freight business and the receipt and transmission of money by letter or cable for the benefit of the Gdynia America Shipping Lines, Ltd., a foreign corporation engaged in foreign commerce.  The petitioner for its services receives fifteen per cent on passenger business and five per cent on freight business and a fee for receiving and transmitting money abroad.  It is agreed that the gross amount of these commissions, fees and incidental receipts is the measure of the tax

which petitioner claims is a burden on foreign commerce and, therefore, unconstitutional.

The first question to determine is whether all of the business done by the petitioner is to be classed under the head of " foreign commerce." The respondents argue that the foreign exchange transactions, whether they take the form of telegrams or of letters transferring drafts of money, are purely local in their nature and are not matters of foreign commerce. The respondents urge in support of their contention as a deciding precedent the case of *Nathan* v. *Louisiana* (49 U. S. [8 How.] 73). That case, however, is not an authority for the point raised. The brokers who were taxed in that case dealt exclusively in foreign bills of exchange and it was held that such a business was not foreign commerce within the meaning of the commerce clause of the Constitution of the United States. The business of buying and selling foreign bills of exchange is no more foreign commerce than would be the retail or wholesale buying and selling of any foreign goods in the city of New York. The " foreign " element in the transaction is too remote to be considered as an infraction of the commerce clause. In the case at bar, however, the transfer of the funds is as important as the selling of the tickets. Undoubtedly ticket agencies are an instrumentality of foreign commerce and we consider that all the business done by the petitioner must be classed as part of foreign commerce.

The case at bar is not distinguishable in any controlling particular from *Texas Transport Co.* v. *New Orleans* (264 U. S. 150). In that case an occupation tax was laid by the city of New Orleans. The tax was graded. Business was classified into several grades according to the amount of business done. Defendant, Texas Transport and Terminal Company, was a corporation doing the business of a steamship agency whose receipts in New Orleans exceeded $100,000 a year. It came into the highest category and was taxed $400 a year. The company had branches in six ports of the United States. Its main office was in New York city. It was a wholly independent corporation. The decision did not turn on the place of incorporation of the defendant. As stated in the dissenting opinion of Mr. Justice BRANDEIS (p. 156): " The services rendered include, among other things, arranging with independent stevedore concerns for discharging and loading cargoes; arranging with independent dealers for bunkering, that is, buying fuel and oil; making provision for fitting ships for any special or peculiar cargo; making provision for compliance with the immigration and customs laws; and paying the ship's disbursements. For these, and the other services of soliciting cargoes, arranging for their delivery,

and collecting payment for freight, the company is compensated. Usually the compensation is measured by a percentage on the gross freight charges collected. Sometimes it is a lump sum for each ship served. These comprehensive services require, for their efficient performance, the employment of a steamship agency, or its equivalent, whatever the home port of the ship or the principal place of its owner's business."

It will be noted that the compensation to the defendant in that case was a percentage of the gross charges in some cases and in some cases a lump sum for each ship served. This parallels the case at bar in that petitioner's income as shown in its tax return amounts to lump sums of interest, commissions, clearance fees and the like. The Supreme Court of the United States interpreted the effect of the tax in the *Texas Transport Co.* case to be similar in its effect to the tax disapproved of in *McCall* v. *California* (136 U. S. 104). The court said that the decision in the *McCall* case forbade a State " to impose a tax upon persons for securing or seeking to secure the transportation of freight or passengers in interstate or foreign commerce." The court went on to say that the *McCall* decision controlled the *Texas Transport Co.* case on the ground that the only difference was that in the *McCall* case the agent was seeking interstate passenger business while in the *Texas Transport Co.* case the agent was engaged in seeking interstate and foreign freight business.

The parallel is so close and complete between the facts disclosed in the present case and those described in the *Texas Transport Co.* case that this court is unquestionably bound by the precedent and further discussion of the principle involved is of no avail. None of the cases cited by the city of New York is in point or in conflict with the *Texas Transport Co.* case. Each case of this sort is decided on the basis of its exact facts. The majority of the Supreme Court of the United States has held that the type of business done by the petitioner is foreign commerce and that this sort of tax is a burden thereon. The assessment of the tax in the present case upon the petitioner accordingly is unconstitutional.

The order of certiorari should be sustained, the determination of the comptroller and the board of excise tax review should be annulled and the taxes imposed upon the petitioner rescinded and vacated, with fifty dollars costs and disbursements to the petitioner.

MARTIN, P. J., GLENNON, UNTERMYER and DORE, JJ., concur.

Order of certiorari unanimously sustained, the determination of the respondents annulled and the taxes imposed upon the petitioner rescinded and vacated, with fifty dollars costs and disbursements to the petitioner. Settle order on notice.